**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**Shreveport Division**

| | |
|---|---|
| PROVIDENCE CLASSICAL ACADEMY, INC., a Louisiana nonprofit religious corporation; THE BATON ROUGE CHRISTIAN EDUCATION FOUNDATION, INC. d/b/a THE DUNHAM SCHOOL, a Louisiana nonprofit religious corporation; and JOSHUA AND CLAIRE COX, individually and on behalf of C.C., a minor child, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| CADE BRUMLEY, in his official capacity as Louisiana Superintendent of Education; and MEMBERS OF THE LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION, in their official capacities, | ) ) ) ) ) ) ) |
| *Defendants*. | ) |

Civil Action No.

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

## INTRODUCTION

Providence Classical Academy, The Dunham School, and more than 200 hundred other faith-based schools across Louisiana simply wish to continue providing safe, faith-inspired prekindergarten education to Louisiana children in accordance with their religious mission and longstanding practices. Parents like the Cox family chose Providence and other faith-based schools precisely because of their values, community, and commitment to educating the whole child in a faith-centered environment.

1

But under Act 409 of 2025, Louisiana has imposed sweeping new unfunded licensing and regulatory mandates on religious schools' prekindergarten programs — mandates from which public schools and Montessori schools are expressly exempt. As a result, religious schools are forced to either shut down their prekindergarten programs or undergo costly licensure, invasive inspections, and disruptive operational changes that public and Montessori programs do not face. These burdens fall directly on faith-based institutions and the families they serve, raising tuition, straining resources, and chilling parents' ability to select religious education for their young children.

This classification fails constitutional scrutiny. The Supreme Court has made clear that religion is not a second-class right in the United States. "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). Put differently, "[a] law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021).

Religious schools are no less safe or qualified than comparable public or Montessori programs. The only difference is that Louisiana has chosen to favor certain secular schools while disfavoring religious ones. By doing so, Act 409 violates the federal and state constitutional guarantees of religious liberty and equal protection.

Unless enjoined, Defendants will enforce Act 409 in violation of the United States and Louisiana Constitutions, causing irreparable harm to Plaintiffs for which no adequate remedy at law exists. Plaintiffs bring this action to vindicate their constitutional rights and to ensure that

Louisiana families may continue to choose faith-based prekindergarten education free from arbitrary, discriminatory, and unconstitutional burdens.

## JURISDICTION AND VENUE

1.    Plaintiffs commence this civil rights lawsuit under the First and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs seek declaratory and injunctive relief to prevent the enforcement of Louisiana's Act No. 409 of 2025, which unlawfully discriminates against religious schools and the families they serve by subjecting them to unfunded mandates in the form of burdensome licensure and regulatory requirements initially created for non-school child care businesses from which similarly situated public and Montessori schools are exempt.

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims arising under the Louisiana Constitution, because those claims form part of the same case or controversy.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred within this district, and Plaintiffs Providence Classical Academy and the Cox family reside in this district.

## PARTIES

4.    Plaintiff, Providence Classical Academy, Inc. ("Providence"), is a Louisiana nonprofit religious school located in Bossier City, Louisiana. Providence offers a faith-based education to students from early childhood through twelfth grade, including prekindergarten programs for four-year-old children. As part of its religious mission, Providence provides a safe, nurturing environment that integrates academic instruction with spiritual formation.

5.      Providence has as its mission: "Providence Classical Academy seeks to pursue the glory of God and the good of His people by providing a classical and Christian education founded upon a Biblical worldview, which equips students to know, love, and practice the Truth and challenges them to strive for excellence as they live purposefully in service to God and man." Providence has a statement of faith that defines its Christian creed.[1] Providence integrates its faith-based mission into all aspects of its education and programming.

6.      Providence is accredited by Cognia and the Mid-South Association of Independent Schools.

7.      Providence runs a pre-kindergarten program for 4-year-olds and a kindergarten program for 5-year-olds under the general heading Early Grammar School. Providence explains on its website, "In this stage, classroom instruction is focused on teaching the fundamentals of reading, writing, and math and developing a base of knowledge that will serve as a foundation for the future. Our teachers intentionally cultivate a sense of wonder and curiosity in our students about the world that God has made."

8.      Providence has 45 4-K students spread across three classes of 15, each of which has a teacher and an aide (Providence does not have a 3-K program).

9.      Plaintiff, The Baton Rouge Christian Education Foundation, Inc. d/b/a The Dunham School ("The Dunham School"), is a Louisiana nonprofit interdenominational Christian school located in Baton Rouge. The Dunham School offers a faith-based education to students from two-years-old through twelfth grade, including prekindergarten programs for three- and four-year-old children. As part of its Christian mission, The Dunham School provides a safe, nurturing environment that integrates academic instruction with spiritual formation.

---

[1] https://www.pcabossier.org/statement-of-faith.

10.      Faith is core to everything at The Dunham School. "As a Christian school, we care about our students' education from an eternal perspective. By design, everything we do here—academics, athletics, arts—is grounded in the desire to see our students mature in faith and character. Whether it's through chapel services, Bible classes, or service opportunities, our aim is to educate the heart as fully as the mind so that our students are empowered to step forward and lead as the hands and feet of Christ. Ours is a campus set apart to worship, glorify, and serve God." The Dunham School integrates a Bible curriculum, weekly worship services, and other-oriented community service into its regular educational rhythms. The Dunham School's Christian creed is defined by its Statement of Faith.[2]

11.      The Dunham School is accredited by the Southern Association of Independent Schools and Cognia. It is also an Apple, Inc., Distinguished School and a former U.S. Department of Education Blue Ribbon School (2005).

12.      The Dunham School runs a pre-kindergarten program for 3- and 4-year-olds and a kindergarten program for 5-year-olds as part of its lower school.

13.      Under Act 409, Providence and The Dunham School face significant new regulatory burdens. These expensive burdens directly and immediately threaten these schools' ability to continue offering prekindergarten education consistent with their faith and at an affordable cost. Act 409 is an unfunded mandate and the entire cost of compliance is to be borne by the school. It will undoubtedly require nonpublic schools like Plaintiffs to either immediately shut down their prekindergarten programs or pass along these new costs in the form of tuition increases to families, thereby making faith-based prekindergarten unaffordable and inaccessible in these communities.

---

[2] https://www.dunhamschool.org/about

14.     Plaintiffs Joshua and Claire Cox are United States citizens and residents of Haughton, Louisiana, and the parents of C.C., a minor child enrolled in 4-K at Providence. The Coxes have chosen to enroll C.C. in a faith-based education to ensure that C.C. is raised in accordance with the family's religious beliefs and values. Act 409 burdens the Cox family's exercise of this right by imposing additional costs and restrictions on religious schools, thereby threatening access to affordable, faith-based prekindergarten education for C.C.

15.     The Coxes are parents of nine children, six of whom are adopted. They pay tuition for their children, including C.C., to attend Providence because they promised all their kids a better future, a responsibility they feel in a particular way towards their adopted children. They could not afford to absorb a tuition increase.

16.     They chose Providence because it offers a classical curriculum in a Christian setting. They drive 40 minutes each way to send their kids there.

17.     Defendant Cade Brumley is the Louisiana Superintendent of Education. In this role, he is responsible for implementing and enforcing Act 409, including the licensure requirements for nonpublic schools offering prekindergarten programs. He is sued in his official capacity.

18.     Defendants Paul Hollis, Dr. Sharon Latten Clark, Sandy Holloway, Stacey Melerine, Lance Harris, Ronnie Morris (president), Kevin Berken, Preston Castille, Conrad Appel, Dr. Judy Armstrong, and Simone Champagne are the members of the Louisiana Board of Elementary and Secondary Education (BESE). BESE is charged with establishing and enforcing standards for early learning programs, including licensure requirements imposed by Act 409. They are sued in their official capacities.

## FACTUAL BACKGROUND

### The Prekindergarten Licensing Regime Under Act 409

19.     In 2025, the Louisiana Legislature enacted Act 409, a sweeping new statute regulating prekindergarten programs affiliated with public and nonpublic schools. Several of the laws' provisions—those generally titled "child welfare and safety minimums standards"—apply to all school-sponsored pre-k programs, public or private. But the law goes on to impose additional regulatory obligations on some nonpublic schools while exempting public and Montessori schools. The law requires that any nonpublic school serving three- and four-year-old children obtain a license as an "early learning center," which comes with dozens of additional regulatory expectations.

20.     The early learning center statute previously only applied to "standalone prekindergarten programs not attached to a school." S.B. 41, page 8, lines 14-16. *See* 28 La. Admin. Code § CLXI-303(A) (similar) (Title 28, Section CLXI, sometimes also called Bulletin 137, is the section of the Louisiana Administrative Code governing early learning centers).

21.     The Act amends the early learning center statute to now apply to any "nonpublic prekindergarten program," with a clear exemption from licensure for "prekindergarten programs attached to a public day school, Louisiana Montessori accredited or provisionally accredited approved schools, camps, [or] registered family child day care homes." S.B. 41, page 8, lines 22-25.

22.     Failure to secure an early childhood center license from the Department of Education can be punished by a civil fine of $1,000 per day for the knowing and continued unlicensed operation and suit for injunction to stop the unlicensed operation. La. R.S. 17:407.37. *See* 28 La. Admin. Code § CLXI-305(A)-(C). Securing such a license but then failing to meet the individual requirements of licensure can also result in civil fines. La. R.S. 17:407.46(A)(1); 28 La. Admin. Code § CLXI-1105(C)(2).

7

23.    The schools must meet the regulatory standards for licensure at the time they apply for licensure, as the Department will audit their compliance before issuing the license. La. R.S. 17:407.39(A); 28 La. Admin. Code § CLXI-703(A).

24.    As licensed early learning centers, Plaintiffs, Providence and The Dunham School, and other faith-based schools will be subject to certain statutory requirements, from the mundane (training in shaken baby syndrome) to the detailed (approval from the Office of the State Fire Marshal and the Louisiana Department of Health for childcare center regulations).

25.    The Plaintiff schools will also be subject to a government-approved complaints process (La. R.S. 17:407.40(A)(6)) and at least an annual unannounced inspection (La. R.S. 17:407.43; 28 La. Admin. Code § CLXI-315(A)). During any unannounced inspection, the schools must provide immediate and free access for the inspector to all records, the entire campus, and to all employees for interviews. 28 La. Admin. Code § CLXI-705(B).

26.    The fiscal note attached to Senate Bill 41, which became Act 409, estimated that the Department will hire eight additional bureaucrats to regulate the faith-based pre-K programs, with six inspectors, a supervisor, and a compliance consultant.[3] In other words, the Department will be staffing up with more bureaucrats to conduct these unannounced inspections, interviews, and records reviews.

27.    The implementing regulations for the Department of Education create many additional expectations imposed on early learning centers.

       a.    A licensed center must document approval from the Office of State Fire Marshal, the Office of Public Health, its city fire authority, if applicable, and its zoning

---

[3] Legislative Fiscal Office, Fiscal Note for S.B. 41 (Apr. 22, 2025), https://legis.la.gov/legis/ViewDocument.aspx?d=1407400.

authority, if applicable. 28 La. Admin. Code § CLXI-701(E)(1)-(4). A licensed center must then renew these approvals with each annual review cycle from the Department.

b.  A licensed center must as a matter of law make "immediate notification to emergency personnel, law enforcement as applicable, and other appropriate agencies for the following types of critical incidents," including "a child left unsupervised for any amount of time" and use of "prohibited behavior management," such as "being bullied by another child." 28 La. Admin. Code § CLXI-1103(A). That's right—if one 3-year-old bullies another 3-year-old, the center is legally obligated to call the police on him or her.

c.  A school may not use "prohibited behavior management" tools, which includes any physical or corporal punishment, "telling a child to 'shut up,'" a child "being deprived of food or beverages" as a punishment, or "having active play time withheld for disciplinary purposes" besides a timeout imposed during recess (and such timeout shall not last longer than four minutes). 28 La. Admin. Code § CLXI-1509(A)(8)(b).

d.  The center must assign an employee to accompany any visitor during the entire length of the visit, such as an independent contractor or maintenance person. 28 La. Admin. Code § CLXI-1505(A).

e.  The center must maintain a list of all persons at the center, with a sign-in and sign-out time for every child, staff person, independent contractor, visitor, board member, and clergy person, and retain these records for two years. 28 La. Admin. Code § CLXI-1507.

f.  A center may not show a 3-K or 4-K classroom a movie or television show rated PG or higher; only programs rated G may be shown.

g.  A center must offer its students at least 60 minutes of indoor or outdoor play time per day.

h.  A center must have two staff people qualified as a director (the rules only require one, but that one must be on-site at all times, so practically two are required if the director ever needs a vacation day, sick day, or off-site meeting).

   i.  A center director must have "an early childhood ancillary certificate and one year of experience in teaching or care in a licensed early learning center" (or a comparable setting, subject to approval by the department); or

   ii.  "a national administrator credential and one year experience in teaching or care in a licensed early learning center, or comparable setting, plus 6 credit hours or 90 clock hours of training in child care, child development, early childhood, or management/administration, subject to approval by the department"; or

   iii.  "three years of experience as a director or staff in a licensed early learning center, or comparable setting, subject to approval by the department plus 6 credit hours or 90 clock hours of training in child care, child development, early childhood, or management/administration approved by the department." 28 La. Admin. Code § CLXI-1709(B)(1-3).

i.  "When the number of children present at an early learning center exceeds 42, the duties of the director or director designee shall consist only of performing administrative duties or there shall be an individual present whose job duties consist

solely of administrative duties and of ensuring that staff members working with children do not leave their classrooms to handle administrative duties." 28 La. Admin. Code § CLXI-1707(C).

j.  On any field trip, "An adult staff member from the center shall be present with each group of children," *i.e.*, parent chaperones are insufficient. 28 La. Admin. Code § CLXI-1711(J).

k.  Staff must accompany 3-K children to the bathroom.  28 La. Admin. Code § CLXI-1713(G)(2).

l.  The center must provide training on topics like "prevention of shaken baby syndrome" and "prevention of sudden infant death syndrome and use of safe sleep practices" even though as 3- and 4-K programs, the Plaintiffs do not supervise any babies or infants. 28 La. Admin. Code § CLXI-1719(B).

m.  "Whether the center is administering medication or not, each early learning center shall have at least two staff members trained in medication administration and at least one trained staff member on the premises during the hours of operation." 28 La. Admin. Code § CLXI-1725(B).

n.  The center must have a physical dedicated phone number specific to the center for incoming and outgoing calls—a phone number for the overall school is not sufficient. 28 La. Admin. Code § CLXI-1901(A).

o.  Teachers are not permitted to have microwave ovens in their classrooms. 28 La. Admin. Code § CLXI-1901(I).

p.  The 3-K and 4-K students must have a separate, exclusive recess time from all other students at the school. 28 La. Admin. Code § CLXI-1903(A).

q. A minimum of 35 square feet of usable indoor space shall be available per child for children in 3-K. 28 La. Admin. Code § CLXI-1903(D).

r. A minimum of 25 square feet of usable indoor space shall be available per child for children in 4-K. *Id*.

s. The center may not have or use "toy chests, storage bins and other equipment with attached lids." 28 La. Admin. Code § CLXI-1907(F)(2).

t. "Hot liquids [such as coffee or tea] shall not be consumed in the presence of children." 28 La. Admin. Code § CLXI-1911(H).

u. "A minimum of a breakfast or morning snack, lunch, and afternoon snack shall be served to children, and meals and snacks shall be served not more than three hours apart. Centers who do not serve breakfast shall have nutritious food available for children who arrive in the morning without having eaten breakfast." 28 La. Admin. Code § CLXI-1919(D).

v. Students cannot be required to finish all their food. 28 La. Admin. Code § CLXI-1919(D)(3).

w. Drinking water shall be readily available *outdoors* to children at all times. 28 La. Admin. Code § CLXI-1919(D)(5).

x. The center must maintain an evacuation pack that includes a battery-powered flashlight and radio and batteries and disposable cups and bottled water. 28 La. Admin. Code § CLXI-1921(C)(6)-(7).

y. For any field trip in a bus or other vehicle, the vehicle shall include a prominent poster with the name of the director and the name, phone number and address of the center. 28 La. Admin. Code § CLXI-2101(A)(11).

28.     The above list of 25 rules, which is not comprehensive but merely exemplary, will apply as of January 1, 2026, to all faith-based school-sponsored pre-K programs in Louisiana, but not to any public or Montessori school-sponsored pre-K programs.

29.     This disparate treatment imposes significant costs and disruptions on religious schools. Compliance requires new hiring, retraining of staff, and costly facility modifications. These expenses are ultimately passed on to parents in the form of higher tuition, limiting families' ability to choose faith-based prekindergarten education.

30.     Religious schools are not inherently less safe than public or Montessori schools, and in fact many already meet or exceed existing standards through diocesan oversight, denominational accreditation, and longstanding child safety practices. There is no legitimate basis for treating them as presumptively deficient.

31.     On information and belief, the exemptions for public and Montessori schools were included for political reasons rather than any genuine difference in safety or educational quality.[4] The result is a statutory scheme that favors secular schools while burdening faith-based ones.

32.     Plaintiffs are directly, immediately, and irreparably injured by Act 409. Providence and The Dunham School must either immediately shut down their prekindergarten programs or comply with costly new mandates to curtail their prekindergarten programs, while the Cox family faces decreased school choices or increased tuition and/or a lessened educational experience for C.C. as teachers and administrators have to dedicate more time to compliance rather than the classroom.

---

[4] *See* Patrick Wall, *Louisiana adopted stricter pre-K rules. Some private schools aren't happy*, NOLA.com (Oct. 1, 2025), https://www.nola.com/news/education/louisiana-pre-k-private-schools-law-regulation/article_987b90cd-908f-435c-9906-1f746eac49dc.html.

33.    Act 409 therefore imposes discriminatory burdens on religious schools and families in violation of both the United States Constitution and the Louisiana Constitution.

**Impact on Plaintiffs**

34.    As interpreted and enforced by Defendants, Louisiana's prekindergarten licensing regime under Act 409 requires any nonpublic school serving three- and four-year-old children to obtain an "early learning center" license, undergo inspections, and comply with extensive regulatory mandates. By contrast, public schools with prekindergarten programs and Montessori schools accredited under Louisiana Montessori standards are exempt from these requirements.

35.    Schools operate on a particular calendar unique to their industry. Students and their families make enrollment decisions in the spring, schools set class sizes and hire teachers and other staff based on their enrollment in the late spring / early summer, and by mid-summer teachers are preparing their classrooms for the arrival of students in the late summer. Act 409 makes compliance especially hard because it was enacted after enrollment commitments were made and school staff hiring was completed. In other words, schools had already committed to families to offering 3-K and 4-K classrooms under one set of rules without knowing that the rules would radically change midway through the school year. Similarly, schools set staff levels and made hires for pre-K based on one set of rules without knowing that they would need different staffing levels and employees with different credentials midway through the year. And they set tuition rates based on the costs associated with compliance for the first set of rules, not the second. The January 1, 2026, licensure compliance date embedded in Act 409 drastically disrupts these normal rhythms, making compliance especially hard. Quite simply, Louisiana already faces a teacher shortage, and it is all the harder to find employees who possess specific licensure-required credentials who are free to take a new job in the middle of the school year.

36.    Plaintiffs Providence and The Dunham School have long provided faith-based prekindergarten programs that integrate academic instruction with religious formation in a safe and nurturing environment. Despite their proven track record and existing accreditation, they are now forced to seek a new license and comply with burdensome mandates that public and Montessori schools do not face.

37.    Compliance with Act 409 requires Plaintiff Schools to hire additional staff and alter longstanding procedures for classroom supervision and dismissal. These changes impose substantial financial costs and disrupt established religious and educational practices.

38.    For instance, when visitors like building maintenance contractors arrive at Providence, they are always directed to their specific work area by staff and they do not interact with students who are always with a teacher. However, in order to comply with 28 La. Admin. Code § CLXI-1505(A), Providence will need to hire or reassign additional administrative staff to accompany any visitor during the entire length of the visit.

39.    The same is generally true for The Dunham School—it maintains a sign-in/sign-out system for all visitors but does not have sufficient staff available to assign an adult to continually accompany every visitor. Compliance would require hiring or reassigning administrative staff to accompany any visitor during the entire length of their visit.

40.    Providence and The Dunham School operate like a typical school with parent or bus pick-up and drop-off. However, 28 La. Admin. Code § CLXI-1507 requires that a licensed center maintain a contemporaneous record of the arrival and departure times, date, and first and last name of the person or entity to whom each child is released. The same code requires a daily log of arrival and departure times for all staff, all board members and clergy, all extracurricular

personnel, therapeutic professionals and other independent contractors, and all visitors. This will create additional administrative burden on Providence and The Dunham School.

41.    Though Providence's staff in the prekindergarten program are all trained, experienced professionals, Providence does not have two staff people who are qualified as a director or director-designate under 28 La. Admin. Code § CLXI-1709(B). Nor does Providence have a reasonable path to achieving two employees with director-level credentials under that rule before January 1, 2026, given the number of hours and types of training required. As a result, Providence has no reasonable path to compliance with that rule before application, and coming into compliance with that rule will require significant additional expense and inconvenience.

42.    The Dunham School does have a full-time, dedicated director of its Pre-K program who holds the necessary credentials under 28 La. Admin. Code § CLXI-1709(B). However, she currently works at The Dunham School's satellite campus with a PK2 group of students. The Dunham School does not have a person with those credentials at their main campus, which is where its 3-K and 4-K program is located, as will be required by 28 La. Admin. Code § CLXI-1707(A)(1).

43.    Moreover, The Dunham School has more than 42 students in its 3-K and 4-K program at its main campus. Thus, not only would The Dunham School need a director-credentialed person at its main campus, but that person would need to be dedicated to full-time administration; it could not simply qualify a current teacher as a director-designate. As a result, The Dunham School would have to hire a new or assign a new staff person with these credentials to their main campus program by January 1, 2026, which would require significant additional expense and inconvenience.

44.    Providence has more than 42 4-K students, but it does not have a full-time director assigned to the 4-K program. Rather, Providence has a Head of Lower School (over K4-5th grades), with two additional administrators who assist her. As a result, Providence is not in compliance with 28 La. Admin. Code § CLXI-1709(C), which requires a full-time dedicated administrator/director for programs of more than 42 students. Providence would have to hire a person to fill this role, adding significant cost it would have to spread across tuition for those students, without any obvious benefit in administration beyond rule compliance.

45.    There are many other rules in Chapter CLXI that directly impact the way that Providence and The Dunham School operate, but the foregoing examples illustrate that, unless enjoined, this unfunded mandate creates significant and immediate administrative burdens and expenses for Plaintiffs and interfere in their normal operations as school with a pre-K option for families.

46.    The financial impact on Plaintiff Schools is significant. Full compliance would require the hiring of at least one additional full-time administrator for the 4-K program at Providence, plus additional administrative staff for various tasks and compliance. Providence also faces a difficult choice how to comply when it lacks two employees with director-level Chapter CLXI-compliant credentials, which may require the hiring of additional employees possessing those credentials, the laying off of current staff and their replacement with more expensive staff, or hiring substitute teachers to cover classrooms for several weeks while current staff use paid time to secure the necessary credentials.

47.    The Dunham School faces a similar compliance dilemma when one staff person has those credentials, but she works at a satellite campus, so it would need to hire or more additional persons on the main campus to check that regulatory box.

48.    The Cox family enrolled C.C. in Providence's prekindergarten program to ensure a faith-based foundation for C.C.'s education. Act 409 places Coxes in the position of either paying increased tuition or removing C.C. from religious education altogether.

49.    The burdens imposed by Act 409 fall uniquely on religious families. Parents like the Coxes do not have the option to enroll their children in exempt Montessori or public schools without abandoning their religious convictions.

50.    These licensing requirements thus present an arbitrary and discriminatory barrier to Plaintiffs' ability to provide and access religious prekindergarten education. They impact not only the financial stability of the Plaintiff Schools and their families, but also their right to exercise religion freely and to direct the upbringing of their children consistent with their faith.

51.    Parents also possess a fundamental right to direct the upbringing and education of their children, a liberty interest recognized by the Supreme Court in *Pierce v. Society of Sisters*, 268 U.S. 510 (1925). By imposing discriminatory burdens that uniquely affect religious schools, Act 409 directly interferes with parents' ability to choose a faith-based education for their children in accordance with their convictions.

## FIRST CAUSE OF ACTION

### Violation of Plaintiffs' Rights under the

### Free Exercise Clause of the U.S. Constitution

52.    Plaintiffs incorporate and reallege each and every allegation contained in this Complaint as if set forth fully herein.

53.    The Free Exercise Clause of the First Amendment prohibits laws that burden religious free exercise while giving comparable secular activities a free pass from those same regulatory burdens.

54.     Act 409 conditions participation in prekindergarten education on licensure and compliance burdens that apply only to religious and private schools like Plaintiff Schools, while exempting public and Montessori programs.

55.     According to the Louisiana Legislature's Fiscal Note, 254 schools will be impacted by the licensure requirements in Act 409. On information and belief, over 80% of the schools impacted by the one-sided regulation of nonpublic schools are faith-based schools, including schools from the Christian, Islamic, and Jewish traditions.

56.     This burdensome treatment discriminates against religious institutions and is unconstitutional under *Tandon v. Newsom*, 593 U.S. 61 (2021) and *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021). The Supreme Court has recognized the free exercise inherent in religious education in cases such as *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), *Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020), *Carson v. Makin*, 596 U.S. 767 (2022), and *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020). By burdening religious education while exempting comparable secular education activities like public and Montessori schools, Act 409 is not a neutral law of general application. No policy justification can meet strict scrutiny for this discriminatory treatment.

57.     The law is neither neutral nor generally applicable; it targets religious schools for burdensome regulation while sparing secular comparators.

58.     By enforcing Act 409 against Plaintiffs, Defendants infringe on Plaintiffs' rights under the Free Exercise Clause of the First Amendment and 42 U.S.C. § 1983.

59.     Unless enjoined, Defendants will enforce Act 409 in violation of the Free Exercise Clause, causing irreparable harm to Plaintiffs for which no adequate remedy at law exists.

## SECOND CAUSE OF ACTION

**Violation of Plaintiffs' Rights under the**

**Equal Protection Clause of the U.S. Constitution**

60.     The Equal Protection Clause of the Fourteenth Amendment prohibits states from arbitrarily treating similarly situated persons or institutions differently without a rational basis. Courts apply heightened scrutiny when the treatment burdens a fundamental right, such as religion.

61.     Act 409 requires Plaintiff Schools and all other religious and other private schools serving prekindergarten students to undergo licensure as "early learning centers" and comply with extensive regulatory mandates, while exempting public schools offering prekindergarten programs and Montessori schools accredited under Louisiana Montessori standards.

62.     Religious schools are similarly situated to public and Montessori schools in providing prekindergarten education, yet Act 409 imposes discriminatory burdens only on religious schools and other private institutions.

63.     This disparate treatment is not related to any legitimate government interest, and in practice disfavors religious institutions.

64.     By imposing these unequal burdens, Defendants have violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

65.     Unless enjoined, Defendants will continue to enforce Act 409 in a manner that deprives Plaintiffs of their right to equal protection, causing ongoing irreparable injury for which there is no adequate remedy at law.

**THIRD CAUSE OF ACTION**

**Violation of Plaintiffs' Rights under the**

**Equal Protection Clause of the Louisiana Constitution (Art. I, § 3)**

66.    Plaintiffs incorporate and reallege each and every allegation contained in this Complaint as if set forth fully herein.

67.    Article I, § 3 of the Louisiana Constitution provides that "[n]o person shall be denied the equal protection of the laws" and prohibits laws that arbitrarily or unreasonably discriminate on the basis of religious belief or affiliation.

68.    Act 409 exempts public and Montessori prekindergarten programs from licensure while subjecting Plaintiff Schools and other religious schools to burdensome requirements.

69.    This statutory scheme imposes arbitrary and unreasonable discrimination against Plaintiff Schools, other religious schools, and the families who choose them, in violation of Article I, § 3 of the Louisiana Constitution.

70.    Unless enjoined, Defendants will continue to enforce Act 409 in violation of the Louisiana Constitution, causing irreparable harm to Plaintiffs.

**FOURTH CAUSE OF ACTION**

**Violation of Plaintiffs' Rights under the**

**Louisiana Constitution's Religious Freedom Clause (Art. I, § 8)**

71.    Plaintiffs incorporate and reallege each and every allegation contained in this Complaint as if set forth fully herein.

72.    Article I, § 8 of the Louisiana Constitution provides: "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof."

73.    Act 409 imposes discriminatory burdens on Plaintiff Schools and all religious schools in Louisiana by subjecting them to duplicative licensure and regulations while exempting secular public and Montessori prekindergarten programs.

74.    This unequal treatment substantially burdens the religious mission of faith-based schools like Plaintiff Schools and the rights of parents who seek a religious education for their children.

75.    By enforcing Act 409, Defendants have violated Article I, § 8 of the Louisiana Constitution.

76.    Unless enjoined, Defendants will continue to enforce Act 409 in violation of Louisiana's explicit constitutional protection of religious freedom, causing irreparable harm to Plaintiffs.

**FIFTH CAUSE OF ACTION**

**Declaratory Judgment (28 U.S.C. § 2201)**

77.    Plaintiffs incorporate and reallege each and every allegation contained in this Complaint as if set forth fully herein.

78.    An actual, justiciable controversy exists between Plaintiffs and Defendants concerning the constitutionality of Act 409 of 2025, as enforced against religious schools and the families they serve.

79.    Plaintiffs contend that Act 409, by subjecting religious and other private schools to licensure and regulatory burdens not imposed on similarly situated public or Montessori schools, violates the Equal Protection and Free Exercise Clauses of the U.S. Constitution, as well as Article I, §§ 3 and 8 of the Louisiana Constitution.

80.    Defendants contend, or will contend, that Act 409 is valid and enforceable, creating an actual and substantial controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

81.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and legal relations of the parties and thereby resolve this dispute.

82.     Plaintiffs therefore seek a declaration from this Court that Act 409 is unconstitutional as applied to them and similarly situated religious schools and parents, and that Defendants may not enforce its requirements against Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court provide them with the following relief:

(A)     A judgment invalidating and setting aside the early learning licensure provisions of Act 409 of 2025 as unconstitutional under the U.S. Constitution and the Louisiana Constitution;[5]

(B)     A declaratory judgment that the licensure provisions of Act 409, facially and as applied, violates Plaintiffs' right to the free exercise of religion under the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983;

(C)     A declaratory judgment that the licensure provisions of Act 409, facially and as applied, violates Plaintiffs' right to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983;

(D)     A declaratory judgment that the licensure provisions of Act 409, facially and as applied, violates Plaintiffs' right to equal protection of the laws under Article I, § 3 of the Louisiana Constitution;

---

[5] Plaintiffs do not here assert that Act 409's provisions setting child safety and welfare minimum standards, which apply to all schools, or making changes to the state registry are unconstitutional.

(E)     A declaratory judgment that the licensure provisions of Act 409, facially and as applied, violates Plaintiffs' right to the free exercise of religion under Article I, § 8 of the Louisiana Constitution;

(F)     A preliminary injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from implementing and enforcing the early learning center licensure provisions of Act 409 against Plaintiffs and similarly situated religious schools and parents until this Court issues a ruling with respect to Plaintiffs' request for the issuance of a Permanent Injunction;

(G)     A permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the early learning center licensure provisions of Act 409 against Plaintiffs and similarly situated religious schools and parents;

(H)     Plaintiffs' reasonable attorneys' fees, costs, and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(I)     All other and further relief as this Court deems just and proper.

Respectfully submitted this 20th day of October 2025.

David C. Fleshman (#34382)
Carroll Devillier, Jr. (#30477)
BREAZEALE, SACHSE & WILSON, LLP
One American Place, Ste 2300
P.O. Box 3197
Baton Rouge, LA 70821
Office: 225-387-4000
Direct: 225-381-8055
David.Fleshman@bswllp.com
Carroll.Devillier@bswllp.com
*Counsel for The Dunham School*

Royal Alexander
Royal Alexander Law Firm
P.O. Box 1837
Shreveport, LA 71166
Phone: (318) 344-7030
Fax: (318) 722-8001
RoyalAlexanderlawfirm@gmail.com
*Counsel for Providence Classical Academy*

Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
sarah@pelicaninstitute.org
*Attorney for All Plaintiffs*

Daniel R. Suhr
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, IL 60614
dsuhr@americanrights.org
*Pro Hac Vice Motion Forthcoming*
*Attorneys for All Plaintiffs*