UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **PROVIDENCE CLASSICAL ACADEMY INC ET AL** | **CASE NO. 5:25-CV-01574** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CADE BRUMLEY ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is a Motion for Preliminary Injunction [Doc. No. 7], filed by the Plaintiffs, Providence Classical Academy Inc., Baton Rouge Christian Education Foundation Inc., *doing business as* Dunham School, Joshua Cox *individually and on behalf of C.C. minor child*, and Claire Cox *individually and on behalf of C.C. a minor child* (collectively "Plaintiffs"). Defendants, Cade Brumley, Paul Hollis, Sharon Latten Clark, Sandy Holloway, Stacey Melerine, Lance Harris, Ronnie Morris, Kevin Berken, Preston Castille, Conrad Appel, Judy Armstrong, and Simone Champagne (collectively "Defendants")[1] oppose the Motion [Doc. No. 12]. Plaintiffs filed a reply [Doc. No. 14]. After careful consideration of the parties' memoranda and the application of law, the Motion is **DENIED**.

I.   **Background**

This case involves an alleged constitutional issue concerning a law passed in Louisiana. Act 409 ("the Act") which is also known as "Charlie's Law" is administered by the Louisiana Department of Education ("DOE"), which is led by state

---

[1] All Defendants are sued in their official capacity.

Superintendent, Cade Brumley ("Brumley").[2] The DOE is responsible by statute for administering the state's various education-related licensing schemes, including the early learning centers licensure.[3] Approximately a year ago in Jefferson Parish, Louisiana, a three year-old child was abused by a classmate while at school.[4] This abuse happened while the child was enrolled in a prekindergarten program, which, due to the breaks in regulation under then-existing law was not required to be licensed as an early learning center.[5] In the attempt to find accountability and address the abuse, the child's parents discovered a troubling gap in reporting this type of incident for such unlicensed centers: neither the sheriff's office nor the Department of Children and Family Services could take action regarding the abuse, because the child's program fell under neither entity's purview.[6]

In the 2025 regular legislative session, the Louisiana Legislature closed that gap, with the passage of Act 409.[7] The Act passed with unanimous support from both the House and the Senate.[8] The Act further limited who may work at an early learning center and engage in child services, LA. REV. STAT. § 14:91.3; clarified reporting requirements for school employees accused of child abuse or neglect, LA. REV. STAT. § 17:16; and imposed fifteen (15) universally applicable child safety and welfare minimum standards for all early learning centers and prekindergarten

---

[2] [Doc. No. 7-1, p. 5].
[3] [Id.].
[4] [Doc. No. 12, p.1].
[5] [Id.].
[6] [Id.].
[7] [Id.].
[8] [Id.].

programs, LA. REV. STAT. § 17:407.41.[9] The Act also allows exemptions under LA. REV. STAT. § 17:407.35, which include "grades kindergarten and above, prekindergarten programs attached to public day school, Louisiana Montessori accredited or provisionally accredited approved schools, camps, registered family child day care homes, and care given without charge."[10] An additional exemption is any "recognized religious organization which is qualified as a tax-exempt organization under Section 501(c) of the Internal Revenue Code, which remains open for not more than twenty-four hours in a continuous seven-day week and in which no individual child remains for more than twenty-four hours in one continuous stay[.]"[11]

Notwithstanding the limited licensure exemptions, "all nonpublic prekindergarten programs shall be licensed as an early learning center," and thus, comply with the minimum safety and welfare guidelines.[12] Act 409's fifteen (15) statutory minimum child health and safety standards took effect on October 1, 2025.[13] The State Board of Elementary and Secondary Education ("BESE") granted waivers under LA. REV. STAT. § 17:407.40, including a one-year waiver of the 15:1 student-to-teacher ration for four-year-old classrooms (through the end of the 2025–26 school year).[14]

---

[9] [Id. at p. 2].
[10] [Id. at p. 8].
[11] [Id.].
[12] [Id.].
[13] *See* La. Rev. Stat § 17:407.41(A)(1–15).
[14] [Doc. No. 12, pp. 9–10].

For early learning center licensing, the Act instructed all covered schools and programs to apply by January 1, 2026.[15] Consistent with the Act's transition, the DOE only requires that an owner clear the Child Care Criminal Background Check before applying; additional licensing requirements may be satisfied after submission.[16] The DOE also coordinated with the Louisiana Department of Health to defer new inspections until January 1, 2027, allowing schools to rely on their existing pre-Act-409 inspections for purposes of applying.[17] The DOE further made an agreement with the State Fire Marshal to continue previous inspection guidelines—inspecting schools as schools, rather than as newly licensed early learning centers—unless they built or sought to convert a building for a different purpose.[18] Until then non-public schools may use their already completed inspections under the pre-Act-409 regime as sufficient to apply for an early learning center license.[19]

Once applications are submitted, the DOE will then conduct an on-site inspection and complete all required background checks.[20] The DOE plans to issue all licenses and notices of needed changes simultaneously near the end of the 2025–2026 school year, after which applicants may respond, devise compliance plans, or seek individualized regulatory waivers.[21]

---

[15] [Id. at p. 10].
[16] [Id.].
[17] [Id.].
[18] [Id.].
[19] [Id.].
[20] [Id.].
[21] [Id. at p. 11].

Plaintiffs filed this Preliminary Injunction alleging that Act 409 is discriminatory under the First Amendment, specifically the Free Exercise Clause, since faith-based institutions are not treated the same as secular programs based on the licensing requirement and its exemptions.[22] Plaintiffs allege that they have a strong likelihood of success on the merits based on their First Amendment Free-Exercise claim, and that they will suffer irreparable harm by the costs of hiring additional staff due to a severe teacher shortage in the state, which will raise the cost of tuition all in a quick time frame.[23] Plaintiffs only challenge the licensure requirement and its exemptions in Act 409.[24] Defendants assert that Act 409's licensing requirement and its accompanying exemptions are neutral and generally applicable, emphasizing that the statute's text mandates licensing for all nonpublic prekindergarten programs, not exclusively those that are faith-based.[25]

The issues have been fully briefed, and the Court is prepared to rule.

## II. Law and Analysis

### A. Standard of Review

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted); *see Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (calling it "the exception rather than the rule"). The purpose of a TRO is to "preserve for a very brief time, the status quo, so as to avowing

---

[22] [Doc. No. 7-1, pp. 4–5].
[23] [Doc. No. 7-1].
[24] [Doc. No. 14, p. 3].
[25] [Doc. No. 12, p. 23].

irreparable injury pending a hearing on the issuance of a preliminary injunction." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974) (noting that *ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo"). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)).

To obtain a preliminary injunction or TRO, a movant must, through an affidavit or verified complaint, establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat or irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denies outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *See* FED. R. CIV. P. 65; *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted).

    **B. Analysis**

        **1. Substantial Likelihood of Success on the Merits**

Plaintiffs' core claim is that Act 409 forces prekindergarten programs associated with private schools to obtain an early learning license and this requirement violates the First Amendment's Free Exercise Clause because the law

does not meet the standard of being "neutral and generally applicable."[26] They argue that the exemptions provided to public schools and "Louisiana Montessori accredited or provisionally accredited approved schools" demonstrate a lack of general applicability, which triggers strict scrutiny.[27]

Defendants assert that Plaintiffs' entire argument rests on the alleged disparate treatment under Act 409.[28] In addressing the alleged disparity between nonpublic schools and public/Montessori schools, Defendants argue this is merely an "imagined unconstitutional difference."[29] They assert that Montessori schools are similarly heavily regulated, often under standards far more demanding than those found in Act 409 and its implementing regulations.[30] Defendants further argue that the Act is neutral and generally applicable, which applies regardless of the religious or secular nature of the prekindergarten program at issue, and that the Act does not impinge on Plaintiffs' free exercise rights.[31]

Act 409's universal requirements state that:

> [A]ll public prekindergarten programs shall comply with the child safety and welfare minimum standards provided in R.S. 17:407.41.

LA. REV. STAT. § 17:407.35(A). Act 409's licensure requirements state that:

> All nonpublic prekindergarten programs shall be licensed as an early learning center pursuant to Part X-B of Chapter 1 of Title 17 of the Louisiana Revised Statutes of 1950.

---

[26] [Id].
[27] [Id. at p. 10].
[28] [Doc. No. 12, p. 23].
[29] [Id.].
[30] [Id.].
[31] [Id.].

Page **7** of **12**

*Id.* § 17:24.8. But Act 409 also contains an exemption from the licensure requirement, which states:

> The provisions of this Part shall not apply to grades kindergarten and above prekindergarten programs attached to a public day school, Louisiana Montessori accredited or provisionally accredited approved schools, camps, registered family day care homes, and care given without charge.

*Id.* § 17:407.35(A). Act 409 defines "early learning centers" as:

> [A]ny child day care center, Early Head Start Center, Head Start Center, or nonpublic prekindergarten program.

*Id.* § 17:407.33(5).

The Court finds that Plaintiffs have not shown a substantial likelihood of success on this claim because the challenged licensure requirement is, in fact, a law of general applicability that does not target religious exercise.

First, the law's expanded definition of "early learning center" is secular on its face, applying to "any approved nonpublic elementary school;" with three-year-old or four-year-old classrooms. Plaintiffs—private religious schools—fall into the broad secular category of nonpublic elementary schools. This is not a law created to single-out religious institutions. By applying to all private schools within this category that are not otherwise explicitly exempted, the law is neutral on its face and in applicability.

Second, the State enacted Act 409 to "protect [] the health, safety, and well-being of the children of the state" in preschool and prekindergarten programs.[32] This alone, is a compelling secular regulatory objective. The exemptions cited above and

---

[32] [Doc. No. 12, p. 7].

mentioned by Plaintiffs—for public schools, Montessori schools, camps, and registered family child day care homes—were carved out based on the fact that those specific programs already fell under the umbrella of regulations this Act was created to bridge the gap for. These exemptions do not appear to be motivated by animus toward religion.

Plaintiffs cite *Tandon v. Newsom*, 593 U.S. 61 (2021). The *Tandon* Court ruled that "[G]overnment regulations are not neutral and generally applicable and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Id.* at 62. The Court finds that Act 409 is generally applicable to all private schools, however Plaintiffs' reliance on the "comparable secular activity" analysis discussed in *Tandon v. Newsom*, raises a question regarding the State's careful exemptions. Plaintiffs argue that the specific exemption, "Montessori accredited . . . approved schools" and other categories renders Act 409 non-neutral by failing to treat private religious prekindergarten programs on par with a "favored class of business."[33] The Court takes note of this contention; however, it finds that based on the record before it, Plaintiffs have not met their preliminary high burden to show a likelihood of success on the merits in invalidating the entire licensing requirement, which applies to all non-exempt private schools, religious or secular within the state of Louisiana.

Since Act 409 is generally applicable to a large class of non-exempt, secular and private schools alike and is justified by a neutral and compelling state interest

---

[33] [Doc. No. 14, pp. 5–6].

in child safety and welfare, Plaintiffs have failed to demonstrate a substantial likelihood that the law will be subject to or even fail strict scrutiny.

### 2. Irreparable Harm

Plaintiffs' central argument for irreparable harm is the *per se* rule that any constitutional violation constitutes irreparable harm.[34] They offer an argument detailing specific financial injuries.[35] Specifically, they contend in this case the teacher shortage will prevent them and other private schools from hiring staff in the required timing.[36] This staff shortage, in turn, will lead to tuition increase to cover the cost of hiring additional staff, and those are costs the parents could not recover at the end of litigation making them irreparable.[37] However, this argument fails due to Plaintiffs not establishing a likelihood of success on the underlying Free Exercise claim.

As for the harms cited—staff costs, increased tuition, and administrative burdens—the Court finds these harms do not amount to irreparable or imminent harm to warrant the relief requested in this preliminary injunction. The Court will address each threat of harm.

First, contrary to Plaintiffs' argument the potential compliance and administrative costs are monetary injuries that can be assessed later if Plaintiffs ultimately prevail in this litigation. A damages award in a 42 U.S.C. § 1983 action

---

[34] [Doc. No. 7-1, p. 13].
[35] [Id].
[36] [Id at p. 12].
[37] [Id.].

would in fact make the parties whole again. The Court finds that this is not considered irreparable harm.

Second, the alleged threat of harm is not sufficiently immediate or irreparable to warrant injunctive relief. Defendants have implemented a clear timeline for Act 409. This timeline addresses that the only required action by Plaintiffs by the initial deadline of January 1, 2026, is the submission of a licensure application.[38] The licenses and notices of needed compliance changes will occur later in the 2025–2026 school year.[39] The Plaintiffs' argument that the these requirements will cause immediate, substantial harm and force school closure is speculative, as the most burdensome regulations are not yet due. Accordingly, Plaintiffs have not demonstrated a substantial threat of irreparable harm and therefore have failed to satisfy an essential prerequisite for the extraordinary remedy of a preliminary injunction.

Given Plaintiffs' failure to satisfy the threshold requirement of demonstrating (1) a likelihood of success on the merits and (2) a substantial threat of irreparable harm, the Court need not address the remaining two factors for obtaining a preliminary injunction.

### III.    Conclusion

Because Plaintiffs have failed to establish a substantial likelihood of success on the merits and a substantial threat of irreparable harm, the Motion for

---

[38] [Doc. No. 12, p. 13].
[39] [Id. at p. 11].

Preliminary Injunction must be denied, and the Court need not proceed to analyze the remaining factors.

**IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Doc. No. 7] is **DENIED**.

MONROE, LOUISIANA, this 15th day of December 2025.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE